UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE COLUMBIA DIVISION

ASHLEY HUMPHREY, individually and as next friend of JOHN HUMPHREY, a minor

     Plaintiffs

v

MAURY COUNTY BOARD OF EDUCATION
DR CARA SKAGGS, in his/her individual and official capacity;
TONJIA POTTS, in his/her individual and official capacity;
DONALD DUGGER, in his/her individual and official capacity;
ANTHONY LEONARD, in his/her individual and official capacity;
DELICIA HULL, in her individual and official capacity;
LACEY KEELING, in his/her individual and official capacity;
WHITTHORNE MIDDLE SCHOOL; and
DOES 1-10,

     Defendants.

Case No.: _____
(Jury Trial Demanded)

**VERIFIED COMPLAINT AND EMERGENCY MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiff Ashley Humphrey, on behalf of herself and her minor son, John Humphrey, brings this verified complaint and emergency motion against Defendants for their deliberate indifference to a life-threatening pattern of disability-based harassment, physical assault, and medical negligence. Plaintiff seeks immediate *ex parte* injunctive relief to protect her medically fragile child from imminent, irreparable harm and a jury trial for damages.

## I. INTRODUCTION AND SUMMARY OF EMERGENCY RELIEF SOUGHT

1. This is an emergency action to save a child's life. Plaintiff John Humphrey is a 13-year-old boy with a complex, life-threatening congenital heart defect who is dependent on a pacemaker. Within the last several weeks, he underwent emergency, life-saving cardiac surgery to re-sew a pacemaker lead that had detached from his heart.

2. John is now in a state of extreme medical fragility. He is under strict medical orders to avoid any physical contact or trauma, as another blow to his chest could dislodge the newly repaired lead, an event that could be fatal. Despite this, he faces specific and ongoing threats of physical violence from other students. Defendants, with full knowledge of the surgery and the new threats, have refused to provide any meaningful protection and demand he return to this imminently dangerous environment.

3. This is a case of state-created danger. Defendants' years-long pattern of deliberate indifference to severe bullying has culminated in a life-or-death crisis. Because John's physical safety cannot be guaranteed for even one more day at school, and because Defendants have used threats of truancy and child protective services referrals to coerce Plaintiff into placing her son in harm's way, immediate judicial intervention is necessary.

4. Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff seeks an immediate Ex Parte Temporary Restraining Order (TRO) to prevent irreparable harm. The specific emergency relief requested is an order:

   a. Declaring that John Humphrey's absences from school, necessitated by the threat to his life, are EXCUSED and mandating that Defendants shall not mark him as unexcused or truant pending a hearing;

   b. PROHIBITING Defendants, their agents, and employees from initiating any truancy proceedings or making any referrals against Plaintiff Ashley Humphrey or her son;

   c. PROHIBITING Defendants from making any retaliatory reports to the Tennessee Department of Children's Services (DCS) or any other child protective agency based on absences related to this safety crisis;

   d. ORDERING Defendants to immediately provide John Humphrey with appropriate homebound instruction and services pursuant to their obligations under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act; and

   e. ORDERED to incorporate school wide measures to ensure no future harassment of John Humphrey, or any other students with disabilities or not, are subjected to any type of unlawful treatment.

   F. Ordering any other protective measures the Court deems necessary to ensure John Humphrey's physical safety

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132; and the Civil Rights Act, 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U S C § 1367, as they arise from the same common nucleus of operative facts.

7. Venue is proper in the Middle District of Tennessee pursuant to 28 U S.C § 1391(b) because all Defendants reside in this District and all events giving rise to the claims occurred in Maury County, Tennessee.

**III. PARTIES**

8. Plaintiff ASHLEY HUMPHREY is an adult resident of Columbia, Maury County, Tennessee. She is the mother and legal guardian of John Humphrey and brings this action individually and as his next friend.

9 Plaintiff **JOHN HUMPHREY,** is a 13-year-old minor who resides with his mother. John has a complex congenital heart defect, is pacemaker-dependent, and is a qualified individual with a disability under Section 504 and the ADA.

10. Defendant **\*\*MAURY COUNTY BOARD OF EDUCATION\*\*** **is the** local education agency responsible for the operation and supervision of public schools in Maury County, including the middle school John attends. It is a recipient of federal funds.

11. Defendant **DR CARA SKAGGS** is the Principal of Whitthorne Middle School.. He/she is sued in his/her individual and official capacity.

12. Defendant **TONJIA POTTS** is the Principal of Whitthorne Middle School. He/she is sued in his/her individual and official capacity

13. Defendant **DONALD DUGGER** is the Principal of Whitthorne Middle School. He/she is sued in his/her individual and official capacity

14. Defendant **ANTHONY LEONARD** is the Section 504 Coordinator for the Maury County School District He/she is sued in his/her individual and official capacity

15. Defendant **DELICIA HULL** is the school nurse at Whitthorne Middle School. She is sued in her individual and official capacity

16. Defendant **LACEY KEELING,** is the school nurse at Whitthorne Middle School. She is sued in her individual and official capacity.

17. Defendant **LISA VENTURA,** is the Director of Schools for Maury County. He/she is sued in his/her individual and official capacity

15. Defendant **WHITTHORNE MIDDLE SCHOOL** is the public school John Humphrey attends.

16. Defendants **DOES 1-10** are individuals, including but not limited to other school staff and students, whose identities are not yet fully known but who participated in or enabled the unlawful acts described herein.

IV. FACTUAL BACKGROUND - THE EMERGENCY

.

17 John Humphrey, was born with a severe congenital heart defect that required multiple open-heart surgeries, including procedures that put him on a cardiopulmonary bypass machine. He is 100% dependent on a pacemaker to regulate his heartbeat. The pacemaker uses epicardial leads, which are surgically sewn directly onto the outer surface of his heart muscle, making them uniquely vulnerable to dislodging from physical trauma.

18. For years, John has been the target of relentless bullying at his middle school. Peers constantly taunt him for his medical condition, his surgical scars, and his inability to keep up in athletics. Plaintiff Ashley Humphrey has reported this disability-based harassment to school officials, including Defendant Principals, on dozens of occasions. Her pleas were consistently ignored

19. Approximately one year ago, the harassment escalated to violence. In gym class, another student physically assaulted John. During the ensuing fight, John was struck multiple times in the chest, in the area of his pacemaker. Teachers broke up the fight. No one from the school ever called Ashley Humphrey. .

20. When Ashley Humphrey learned of the assault and called the school, Defendant Principals refused to investigate or discipline the aggressor. Instead, blamed the victim, stating the fight happened because John "lends his mouth all the time and caused the situation."

21. After this incident, Ashley Humphrey formally requested a meeting to develop a Section 504 Plan to ensure John's safety. Her requests were ignored for weeks. An attendance clerk ultimately advised her that the only way to force a meeting with administrators was to let John accumulate unexcused absences to trigger a mandatory truancy meeting.

22. At the resulting meeting, Ashley Humphrey presented peer-reviewed medical research explaining the neurocognitive and social-emotional delays common in children at age 12-13 who, like John, had undergone cardiopulmonary bypass. Defendant 504 Coordinator refused to even look at the documents, callously stating, "anybody could have printed that on Google." He then denied John any accommodations, claiming his own child had a heart procedure and "was just fine."

23. The school's indifference turned into medical negligence in March 2026. On the last day before a school break, John felt dizzy—a primary symptom of pacemaker malfunction—and went to the nurse's office. Defendant Nurses, fully aware of his cardiac history, failed to take his vital signs, perform any assessment, or call his mother. Instead, she gave him a peppermint and sent him back to class.

24. The next morning, Ashley Humphrey rushed John to the emergency room. An interrogation of his pacemaker revealed a lead had detached from his heart. John was immediately hospitalized and underwent emergency, life-saving surgery to re-sew the lead to his heart. His cardiologist confirmed that physical trauma was a likely cause of the detachment.

25. John is now in an extremely fragile post-surgical state. His doctors have issued strict orders to avoid all physical contact, jarring, or trauma to his chest or shoulder to allow the new surgical site to heal. A repeat detachment could be fatal.

26. Immediately upon his planned return to school, John was targeted by two specific students who made it clear they intended to physically fight him. They waited for him in the hallways, postured aggressively, and shouldered him.

27 Ashley Humphrey went to the school with John, informed the administration of his emergency surgery and the new, specific threats, and demanded a safety plan. The school's response was to ignore her for over an hour before telling her the only plan was for John to serve a pre-existing In-School Suspension They refused to provide an escort or any other meaningful protection, offering only a completely ineffective "no-contact order."

28. For years, when Ashley Humphrey has kept John home from school to protect him from bullying, school officials have responded with threats of filing truancy petitions and making reports to DCS. This pattern of coercion is a tool the school uses to force parents to send their children into unsafe environments

29. A clear and present danger to John Humphrey's life exists. Defendants know of his extreme medical fragility and the specific threats he faces, yet they refuse to protect him. Forcing him to return to school under these conditions is to knowingly risk his death.

## V. CAUSES OF ACTION

COUNT I: Deliberate Indifference in Violation of Section 504 of the Rehabilitation Act

30. Plaintiffs re-allege all preceding paragraphs.

31. John Humphrey is a qualified individual with a disability. The Board receives federal funds. Defendants had actual knowledge of severe, pervasive, and objectively offensive disability-based harassment. Their response was clearly unreasonable in light of the known circumstances, rising to the level of deliberate indifference. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999). This indifference deprived John of equal access to educational opportunities.

COUNT II: Discrimination in Violation of Title II of the ADA

32. Plaintiffs re-allege all preceding paragraphs.

33. Defendants, as a public entity, discriminated against John Humphrey on the basis of his disability by failing to provide reasonable accommodations to ensure his safety and by allowing a hostile environment to persist, effectively denying him the benefits of a public education.

COUNT III: Equal Protection Violation under 42 U.S.C. § 1983

34. Plaintiffs re-allege all preceding paragraphs.

35. Defendants, acting under color of state law, deprived John Humphrey of his Fourteenth Amendment right to equal protection by intentionally treating him differently from non-disabled students, denying him the protection from assault afforded to others The Board is liable under Monell for maintaining a policy and custom of deliberate indifference to the safety of students with disabilities.

COUNT IV. First Amendment Retaliation

36. Plaintiffs re-allege all preceding paragraphs

37. Plaintiff Ashley Humphrey engaged in constitutionally protected speech by repeatedly reporting and complaining about the violation of her son's civil rights. In retaliation, Defendants have threatened her with adverse state action, including truancy proceedings that could warrant DCS referrals, to chill her speech and coerce her into silence.

COUNT V: Negligence (State Law)

38. Plaintiffs re-allege all preceding paragraphs.

39. Defendants owed John a duty of reasonable care to provide a safe school environment and to protect him from foreseeable harm They breached this duty, and this breach was the direct and proximate cause of John's physical and emotional injuries.

COUNT VI: Negligent Infliction of Emotional Distress (State Law)

40. Plaintiffs re-allege all preceding paragraphs.

41. Defendants' negligent conduct created an unreasonable risk of causing, and did in fact cause, serious emotional distress to both John Humphrey and Ashley Humphrey

COUNT VII: Intentional Infliction of Emotional Distress (State Law)

42. Plaintiffs re-allege all preceding paragraphs.

43. The conduct of the individual Defendants—including blaming a child for being assaulted, mocking medical evidence, and medically neglecting a cardiac patient—was intentional, extreme, and outrageous, and is not tolerated in a civilized community. This conduct caused severe emotional distress.

COUNT VIII: Violation of Tenn. Code Ann. § 49-6-4503

44. Plaintiffs re-allege all preceding paragraphs.

45. Tennessee law mandates that a principal "shall investigate" any report of physical harm. Defendant Principal willfully violated this mandatory, non-discretionary duty by refusing to investigate the assault on John Humphrey.

COUNT IX: Medical Negligence (State Law)

46. Plaintiffs re-allege all preceding paragraphs.

47. Defendant Nurse owed John a duty of care consistent with that of a reasonably prudent school nurse. She breached this duty by failing to perform a basic assessment of a cardiac patient presenting with a critical symptom, which delayed his diagnosis and caused him harm.

COUNT X: Abuse of Process / Violation of Compulsory Attendance Laws

48. Plaintiffs re-allege all preceding paragraphs.

49  Defendants have used the state's compulsory attendance and mandatory reporting laws for an improper purpose. to retaliate against and intimidate a parent advocating for her disabled child, thereby abusing the legal process.

## VI. EMERGENCY MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER

50. This motion is made pursuant to Fed. R. Civ  P  65(b)  As established by the facts in this Verified Complaint and the attached Declaration of Ashley Humphrey, a TRO is necessary to prevent immediate and irreparable injury.

51. Immediate and Irreparable Injury: John Humphrey faces an imminent threat of physical assault which, due to his post-surgical condition, could result in catastrophic injury or death. This harm is the definition of irreparable. Money cannot compensate for the loss of his life  Forcing him to choose between his education and his life is also an irreparable harm.

52. Likelihood of Success on the Merits.  Plaintiffs have demonstrated a strong likelihood of success on their claims, particularly the deliberate indifference claim under Section 504. The facts show Defendants had actual knowledge of a substantial risk of serious harm and responded in a clearly unreasonable manner.

53. Balance of Equities:  The threatened injury to John's life far outweighs any administrative inconvenience to Defendants in providing homebound instruction or excusing his absences. The balance of harms tips decidedly in Plaintiffs' favor.

54. Public Interest:  The public interest is served by ensuring schools comply with federal civil rights laws and protect the lives of medically vulnerable children.

55. Justification for Ex Parte Relief:  Notice to Defendants before a TRO is issued would be self-defeating. Based on their past conduct, providing notice would likely prompt them to immediately escalate their threats of truancy and DCS involvement, forcing Jane Doe to return her son to the dangerous school environment before the Court has an opportunity to act. Immediate relief is required to preserve the status quo and protect the child's life.

## VII. SPECIFIC INJUNCTIVE RELIEF REQUESTED

A. Temporary Restraining Order
Plaintiff prays for an immediate ex parte TRO ordering that Defendants, their agents, employees, and all persons acting in concert with them are:

1.  ORDERED to immediately mark any and all of John Humphreys absences from April 16, 2026, forward as EXCUSED, pending a hearing on the preliminary injunction.

2.  ENJOINED AND PROHIBITED from initiating, filing, or pursuing any truancy petitions or proceedings against John Humphrey or Ashley Humphrey.

3.  ENJOINED AND PROHIBITED  from making, causing to be made, or threatening to make any reports to the Department of Children's Services (DCS) or any other child protective agency based on John's school absences or the filing of this lawsuit.

4. ORDERED to immediately convene an appropriate team and begin providing John Humphrey with homebound instruction and all related services to which he is entitled under Section 504 and the ADA

5 ORDERED, as an alternative or supplementary measure, to implement a comprehensive safety plan should John Doe attend school,, strict enforcement of no-contact orders against identified aggressors.

6. ORDERED to preserve all evidence related to this matter, including all of John Humphrey's educational and disciplinary records, surveillance footage, and all email and other communications mentioning John or Ashley Humphrey.

7. ORDERED to incorporate school wide measures to ensure no future harassment of John Humphrey, or any other students with disabilities or not, are subjected to any type of unlawful treatment.

B. Preliminary Injunction

Plaintiff will seek a Preliminary Injunction, after notice and a hearing, converting the TRO into an order that remains in effect for the pendency of this litigation, and which further requires Defendants to fund a comprehensive evaluation and implement a lawful 504 Plan.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for judgment against Defendants as follows:

A. That the Court issue an immediate Ex Parte Temporary Restraining Order as described above;

B. That the Court schedule a hearing and issue a Preliminary Injunction;

C. That the Court issue a Permanent Injunction compelling Defendants to comply with all applicable federal and state laws;

D. An award of compensatory damages in an amount to be determined at trial;

E. An award of punitive damages against the individual Defendants for their willful, reckless, and malicious conduct;

F. An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 794a, 42 U.S.C. § 12205, and 42 U S.C. § 1988;

G. A trial by jury on all issues so triable; and

H. Any and all other relief this Court deems just and proper.

**Plaintiff respectfully submits the attached Proposed Order for the Court's consideration.**

**VERIFICATION**

I, ASHLEY HUMPHREY, declare under penalty of perjury under the laws of the United States of America that I have read the foregoing Verified Complaint and Emergency Motion, and the factual allegations contained therein are true and correct to the best of my personal knowledge, information, and belief.

Executed on April | , 2026, in Columbia, Tennessee.

ASHLEY HUMPHREY, Pro Se
501 GREEN ACRES DR., COLUMBIA, TN 38401
9314602816
a.humphrey6846@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that, because this is a motion for *ex parte* emergency relief necessary to prevent immediate and irreparable harm, a copy of this filing will be served upon all Defendants via personal service and/or certified mail immediately upon the Court's entry of a Temporary Restraining Order.