IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION

ASHLEY HUMPHREY, individually, and as parent and next friend of JOHN HUMPHREY, a minor child,

     Plaintiffs,

v.

MAURY COUNTY BOARD OF EDUCATION; DR. CARA SKAGGS, in her individual and official capacity, TONJIA POTTS, in her individual and official capacity, DONALD DUGGER, in his individual and official capacity, ANTHONY LEONARD, in his individual and official capacity, in his individual capacity, DELICIA HULL, in her individual and official capacity, LACEY KEELING, in her individual and official capacity, and DOES 1-10,

     Defendants.

Case No.:

Judge:

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR EMERGENCY MOTION FOR EX PARTE TEMPORARY RESTRAINING ORDER**

Plaintiffs Ashley Humphrey and her minor son, John Humphrey, respectfully submit this Memorandum of Law in support of their Emergency Motion for an Ex Parte Temporary Restraining Order ("TRO") pursuant to Federal Rule of Civil Procedure 65(b). Immediate

FILED
2026 APR 16 PM 1:08
U.S. DISTRICT COURT
MIDDLE DISTRICT OF T

judicial intervention is necessary to prevent the imminent and catastrophic irreparable harm—including serious bodily injury or death—to John Humphrey, a medically fragile eighth-grade student with a pacemaker, who faces a state-created danger at his school due to Defendants' deliberate indifference to disability-based harassment and their unconstitutional retaliation against his mother for her advocacy.

## I. INTRODUCTION

This is a life-safety emergency John Humphrey is a 13-year-old student with a congenital heart defect who is dependent on a pacemaker with epicardial leads. For years, he has been subjected to severe, pervasive, and disability-based harassment at Whitthorne Middle School. Defendants have not only been deliberately indifferent to this harassment but have actively enabled it through victim-blaming and a shocking abdication of their duties. The danger escalated in late 2025,w hen John was physically assaulted in his school's gym, with blows directed at his pacemaker site. He was assaulted 2 times within 20 minutes, and 3 times within 10 days, by the same assailant. Most recently, another bullying and harassment incident left unresolved by school officials, has turned into a act of violence made towards John Humphrey.

Despite a cardiologist's strict orders that John must avoid all physical contact, Defendants refuse to provide adequate protection Instead, John faces daily threats of violence from 2 students who have promised to attack him at the same time, and his mother, Ashley Humphrey, faces retaliatory threats from school administrators, who have warned her that if she keeps John home to protect his life, they will initiate truancy proceedings and could make reports to the Department of Children's Services (DCS).

This Court's immediate intervention is required to enjoin Defendants from (1) marking John's medically necessary absences as unexcused; (2) initiating retaliatory truancy or DCS proceedings; and (3) failing to provide John with homebound instruction as a reasonable accommodation under federal law. Without this relief, John must choose between returning to a school where his life is in jeopardy or facing punitive and unconstitutional state action.

## II. STANDARD FOR EMERGENCY EX PARTE RELIEF

Federal Rule of Civil Procedure 65(b)(1)(A) authorizes a court to issue a TRO without written or oral notice to the adverse party if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." The purpose of an ex parte TRO is to preserve the status quo and prevent imminent, irreparable harm until a hearing can be held.

Here, ex parte relief is not only appropriate but essential. Plaintiffs have shown through their Verified Complaint and the Declaration of Ashley Humphrey that John faces an immediate threat of physical assault that could be fatal. Furthermore, providing advance notice to Defendants would trigger the very harm Plaintiffs seek to prevent: the initiation of retaliatory truancy and DCS proceedings designed to coerce Ashley Humphrey into returning her son to the dangerous school environment before this Court can act. When advance notice would defeat the purpose of the motion, ex parte relief is warranted.

## III. LIKELIHOOD OF SUCCESS ON THE MERITS

To secure a TRO, Plaintiffs must show a strong likelihood of success on the merits. *Winter v Nat. Res Def. Council, Inc*, 555 U.S. 7, 20 (2008). The facts alleged establish a strong likelihood of success on multiple federal and state claims.

A. Plaintiffs Will Succeed on Their Deliberate Indifference Claims Under Section 504 and the ADA.

The Sixth Circuit has made clear that school districts can be held liable for damages under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act (ADA) for their deliberate indifference to student-on-student harassment based on disability. To prevail, a plaintiff must show: "(1) the plaintiff is an individual with a disability; (2) he or she was harassed based on that disability; (3) the harassment was sufficiently severe or pervasive that it altered the condition of his or her education; (4) the defendant knew about the harassment; and (5) the defendant was deliberately indifferent to the harassment." *S S v E. Ky. Univ*, 532 F.3d 445, 454 (6th Cir 2008).

Plaintiffs' evidence satisfies every element. John is disabled due to his cardiac condition (1). The harassment, including physical assaults targeting his chest, was based on his medical vulnerability (2) The harassment was so severe that it resulted in a nurses ignoral of life-threatening medical emergency and now prevents him from attending school, thus altering his education (3) Defendants had actual knowledge of the years of harassment, the specific physical assault, and the ongoing threats (4). Finally, Defendants' response was not merely negligent; it was deliberately indifferent (5) Deliberate indifference is an official response to known harassment that is "clearly unreasonable in light of the known circumstances." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U S. 629, 648 (1999), *see also Moore v. Chilton Cnty. Bd. of Educ*, 1 F Supp. 3d 1281, 1288 (M.D Ala 2014) (applying *Davis* standard to disability claims).

Here, Defendants' response was patently unreasonable. The Principal blamed the victim, stating John "runs his mouth all the time." The 504 Coordinator dismissed authentic medical documentation as something "anybody could have printed. on Google." The Nurse administered peppermint for a cardiac emergency. This pattern of dismissal, victim-blaming, and medical incompetence in the face of a known, life-threatening risk constitutes deliberate indifference.

B. Plaintiffs Will Succeed on Their First Amendment Retaliation Claim.

The First Amendment protects a parent's right to advocate for their child's educational and civil rights without fear of government retaliation. *See, e g., Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F 3d 267, 273 (2d Cir 2011) (recognizing parents' right to speak on matters of public concern regarding their children's education). Defendants' explicit threats to initiate truancy proceedings and file DCS reports in direct response to Ashley Humphrey's protected activity—keeping her son home from a dangerous environment—is a classic case of unconstitutional retaliation designed to chill her speech and coerce her into abandoning her son's safety.

C Plaintiffs Will Succeed on Their State-Created Danger and Tennessee Law Claims.

The Due Process Clause of the Fourteenth Amendment is violated when state actors create or increase the danger to an individual By being deliberately indifferent to known threats and dismantling any semblance of a safe environment, Defendants have created the danger John now faces. Furthermore, Defendants violated their mandatory, non-discretionary duty under Tennessee law to investigate a report of physical assault Tenn. Code Ann. § 49-6-4503(d)(1) requires a principal to "promptly investigate" any report of physical harm from bullying. The Principal's failure to do so is further evidence of deliberate indifference.

# IV. PLAINTIFFS FACE IMMEDIATE AND IRREPARABLE HARM

Irreparable harm is injury for which there is no adequate remedy at law, such as monetary damages. *Winter*, 555 U.S. at 22. The harm facing John Humphrey is the ultimate irreparable harm: the risk of death. His cardiologist has confirmed that another blow to the chest could be catastrophic. The ongoing threats of physical assault are not speculative; they are specific and credible. Forcing John to return to school exposes him to this risk. The loss of life or catastrophic injury is an injury that no court can remedy after the fact. Further, the ongoing psychological trauma and the denial of a safe educational environment also constitute irreparable harm

# V. THE BALANCE OF EQUITIES TIPS SHARPLY IN PLAINTIFFS' FAVOR

The balance of equities requires the Court to weigh the harm to the Plaintiffs if the injunction is denied against the harm to the Defendants if it is granted. Here, the balance is not close. The harm to John Humphrey is the potential loss of his life. The harm to Defendants is the administrative inconvenience of excusing absences and arranging for homebound instruction—an accommodation they are already legally obligated to provide. A school district has no cognizable interest in maintaining an unsafe environment for a disabled student or in using state truancy laws as a weapon of retaliation.

# VI. THE PUBLIC INTEREST FAVORS GRANTING THE INJUNCTION

The public interest is strongly served by the enforcement of federal civil rights laws that protect disabled students. Granting this TRO will affirm the public interest in ensuring that schools are safe havens for all children, especially the most medically vulnerable. It also serves the public interest to prevent state officials from abusing their authority by weaponizing compulsory attendance laws and the child welfare system to silence parent advocates and punish families for protecting their children.

## VII. THE REQUESTED RELIEF IS NARROWLY TAILORED AND LEGALLY APPROPRIATE

Each element of the requested relief is necessary to prevent irreparable harm.

1. Excused Absences and Prohibition of Truancy Proceedings. Under Section 504 and the ADA, excusing medically necessary absences is a required reasonable accommodation. Prohibiting retaliatory truancy proceedings is essential to vindicate Plaintiffs' First Amendment rights.
2. Prohibition of Retaliatory DCS Reports: This relief is necessary to prevent Defendants from using the child welfare system as an instrument of coercion and intimidation.
3. Homebound Instruction: Homebound instruction is a standard reasonable accommodation under Section 504 for students who cannot attend school for medical reasons. *See* Tenn. Comp. R. & Regs. 0520-01-02-.10. Defendants' refusal to provide it is a continuing violation of federal law.
4. Evidence Preservation: An order preserving all relevant evidence, including surveillance footage and electronic communications, is critical to ensure that Defendants do not destroy evidence of their wrongdoing.

# VIII. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court immediately issue an

Ex Parte Temporary Restraining Order granting the relief specified in their motion and

proposed order

Dated  April 2026

Respectfully submitted,

/s/ *Ashley Humphrey*

**ASHLEY HUMPHREY**

**501 GREEN ACRES DR**

**COLUMBIA TN 38401**

**9314602816**

a.humphrey6846@gmail.com