# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | |
|---|---|
| **ASHLEY HUMPHREY,** *individually and as next friend of* **J.H.,** *a minor,*[1]    ) <br> ) <br> ) <br> **Plaintiff,**    ) <br> ) <br> **v.**    ) <br> )    **NO. 1:26-cv-00037** <br> ) <br> **MAURY COUNTY BOARD OF**    ) <br> **EDUCATION, et al.,**    )    **JUDGE CAMPBELL** <br> ) <br> **Defendants.**    ) <br> ) | |

## MEMORANDUM AND ORDER

On April 16, 2026, Plaintiff Ashley Humphrey, proceeding pro se, initiated this civil action in her own name and as next friend of her minor son by filing a "Verified Complaint and Emergency Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction." (Doc. No. 1.) The Clerk's Office replicated Plaintiff's filing on the docket in order to reflect its purported dual nature as pleading and motion. (*See* Doc. No. 2 and corresponding CM/ECF notation.) In support of her request for emergency injunctive relief, Plaintiff also filed a supporting memorandum (Doc. No. 3) and declaration (Doc. No. 4), as well as a separate notice of the emergency nature of the requested relief. (Doc. No. 5.)

In lieu of paying the civil filing fee, Plaintiff has filed an application for leave to proceed in forma pauperis (IFP). (Doc. No. 6.)

---

[1]     Pursuant to Federal Rule of Civil Procedure 5.2(a)(3), the Court will refer to the minor child by his initials.

## I. PAUPER STATUS

Plaintiff's IFP application demonstrates that she is unemployed, receives income in the form of child support and food stamps, and does not have sufficient funds on account to pay either the $405 civil filing fee or her reported monthly expenses. The Court therefore finds that she cannot pay the filing fee in advance "without undue hardship." *Foster v. Cuyahoga Dep't of Health and Human Servs.*, 21 F. App'x 239, 240 (6th Cir. 2001). Accordingly, the IFP application (Doc. No. 6) is **GRANTED**. 28 U.S.C. § 1915(a).

## II. INITIAL REVIEW

### A. Legal Standard

The Court must conduct an initial review and dismiss the Complaint if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Ongori v. Hawkins*, No. 16-2781, 2017 WL 6759020, at *1 (6th Cir. Nov. 15, 2017) ("[N]on-prisoners proceeding in forma pauperis are still subject to the screening requirements of § 1915(e)."). To avoid dismissal for failure to state a claim, the Complaint must contain sufficient factual allegations to render a right to relief "plausible on its face," *Small v. Brock*, 963 F.3d 539, 540 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

### B. Allegations and Claims of the Complaint

Plaintiff alleges that her 13-year-old son, J.H., is dependent upon a pacemaker due to a congenital heart defect. (Doc. No. 1 at 1.) "Within the last several weeks, he underwent emergency, life-saving cardiac surgery to re-sew a pacemaker lead that had detached from his heart." (*Id.*) To

2

protect the integrity of the repair, he is now under "strict medical orders" to avoid contact to the chest. (*Id.* at 2.) Defendants—the Maury County Board of Education, Whitthorne Middle School (which J.H. attends), and various officials of the school and the relevant departments within Maury County government—have "[f]or years" ignored Plaintiff's reports of J.H.'s "disability-based harassment" or bullying by his peers. (*Id.* at 3–4.) Approximately one year ago, J.H. was physically assaulted in gym class and received multiple blows to his chest. (*Id.* at 4.) The school co-principals refused to investigate or discipline the other child, instead assigning blame to J.H. as the cause of the altercation. (*Id.*) Plaintiff formally requested a meeting to develop a "Section 504 Plan" for J.H.'s safety, but her request was ignored. An attendance clerk then advised that Plaintiff could secure the meeting by letting J.H. "accumulate unexcused absences to trigger a mandatory truancy meeting." (*Id.*)

At the resulting truancy meeting, the Defendant "504 Coordinator" refused to consider the results of Plaintiff's medical research showing that cardiac surgery commonly resulted in "neurocognitive and social-emotional delays." (*Id.*) That Defendant also refused to provide any accommodations for J.H. (*Id.*)

On the last day before a school break in March 2026, J.H. felt dizzy and went to the school nurses' office. (*Id.*) The nurses, despite being aware of J.H.'s medical history, gave him a peppermint and sent him back to class. (*Id.*) The following morning, J.H. required the previously mentioned emergency surgery to repair his detached pacemaker lead. (*Id.*) According to his doctors, "[a] repeat detachment could be fatal." (*Id.*)

Upon his return to school, J.H. was targeted by two students who clearly "intended to physically fight him." (*Id.* at 5.) Plaintiff subsequently accompanied J.H. to school, informed the administration of the new threats, and "demanded a safety plan." (*Id.*) The administration

3

responded by (1) informing Plaintiff that J.H. would need to serve a pre-existing in-school suspension, and (2) refusing to provide him any meaningful protection, but only an ineffectual "no-contact order." (*Id.*) "For years, when [Plaintiff] has kept [J.H.] home from school to protect him from bullying, school officials have responded with threats of filing truancy petitions and making reports to [the Department of Children's Services]." (*Id.*) Plaintiff fears these consequences if she keeps J.H. home, but also fears that returning J.H. to school now would place his life in jeopardy. (*Id.*)

Requesting emergency, preliminary, and permanent injunctive relief as well as an award of damages to be determined at trial (*id.* at 8), the Complaint asserts federal claims under Section 504 of the Rehabilitation Act (RA), Title II of the Americans with Disabilities Act (ADA), the Equal Protection Clause of the Fourteenth Amendment, and the First Amendment's protection against retaliation for petitioning the government. (*Id.* at 5–6.) The Complaint also asserts claims under state law. The first three federal causes of action are asserted by Plaintiff on J.H.'s behalf. (*See id.* at 5 (claiming that indifference to disability-based harassment "deprived [J.H.] of equal access to educational opportunities"; that failure to reasonably accommodate J.H.'s disability "effectively den[ied] him the benefits of a public education"; that disparate treatment "deprived [J.H.] of his Fourteenth Amendment right to equal protection").) The fourth federal claim, for retaliation, is asserted by Plaintiff on her own behalf. (*See id.* at 6 ("Plaintiff Ashley Humphrey engaged in constitutionally protected speech by repeatedly reporting and complaining about the violation of her son's civil rights. In retaliation, Defendants have threatened her with adverse state action, including truancy proceedings that could warrant DCS referrals, to chill her speech and coerce her into silence.").) The pendent state-law claims also seek relief based on injuries to one or the other, or both, of Plaintiff and J.H. (*See id.* at 6–7.)

4

## C. Analysis

The Complaint suffers from two defects that must be corrected for this case to proceed. First, "Federal Rule of Civil Procedure 5.2(a)(3) requires litigants to protect the identity of minors by, at minimum, using only the minor in question's initials when filing their pleadings." *Jackson v. Detroit Pub. Schs. Cmty. Dist.*, No. 25-14190, 2026 WL 27818, at *1 (E.D. Mich. Jan. 5, 2026). Because Plaintiff listed the full name of her minor child throughout her Complaint, and "[t]he [C]ourt lacks the ability to redact only portions of Plaintiff's complaint or to strike only portions of it," *id.*, the Clerk will be directed to place the Complaint under seal. Plaintiff will then have 30 days to file an Amended Complaint that complies with Rule 5.2(a)(3) by using only initials where the original Complaint used J.H.'s full name, or by redacting uses of his full name. *See Johnson v. Fennville*, No. 1:21-cv-202, 2021 WL 5579204, at *1–2 (W.D. Mich. May 4, 2021) (ordering plaintiffs to file a redacted complaint complying with Rule 5.2(a)(3), to replace original complaint which was sealed to protect minors); *Thomas v. Unknown*, No. 18-CV-03060-JCS, 2018 WL 4027021 (N.D. Cal. Aug. 21, 2018) (sealing complaint and admonishing that court will strike any amended complaint that fails to comply with Rule 5.2(a)(3)).

Second, if Plaintiff is unable to retain an attorney,[2] the Complaint must be amended to avoid the assertion by the pro se Plaintiff of claims belonging to her minor son. "Parents cannot appear pro se on behalf of their minor children because a minor's personal cause of action is [his] own and does not belong to [his] parent or representative." *Cavanaugh v. Cardinal Local Sch. Dist.*, 409 F.3d 753, 755 (6th Cir. 2005), *abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007), and *cited in Maras v. Mayfield City*

---

[2] There is no indication in the record that Plaintiff is herself a licensed attorney.

*Sch. Dist. Bd. of Educ.*, No. 22-3915, 2024 WL 449353, at *2 (6th Cir. Feb. 6, 2024), *cert. denied*, 145 S. Ct. 150, 220 L. Ed. 2d 18 (2024) ("non-lawyer parents generally may not represent their children"); *see also*, *e.g.*, *Wirtz v. Medina City Sch. Dist. Bd. of Educ.*, No. 1:21-CV-1730, 2022 WL 2657138, at *2 (N.D. Ohio July 8, 2022) (citing, *e.g.*, *McCoy v. Akron Police Dep't*, No. 5:21-cv-51, 2021 WL 1857119, at *1 (N.D. Ohio May 10, 2021) ("[W]hile a parent may technically bring suit on behalf of a minor child, he or she may not do so *pro se*—that is, the parent can only bring suit on behalf of the minor child through an attorney.")). This prohibition is consistent with Rule 17 of the Federal Rules of Civil Procedure and with 28 U.S.C. § 1654.

Federal Rule 17 states that certain representatives "may sue or defend on behalf of a minor," while a minor "who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." Fed. R. Civ. P. 17(c)(1)–(2).[3] But while an individual who is not the real party in interest may bring or defend a civil suit for a minor—representing the interests of the minor and not their own—that individual, if a non-lawyer, may not do legal work on the minor's behalf, including the filing of pleadings. *See N.S. v. Dobson*, No. 22-CV-40015-DHH, 2023 WL 8188772, at *1–2 (D. Mass. Jan. 26, 2023) ("It is well-established by rule and caselaw that a non-attorney, including a parent appearing as guardian ad litem or next friend, such as Ms. Lopez, cannot represent another person, including one's child, pro se. … Rule 17(c)(2) authorizes the next friend to bring suit on behalf of a minor; in other words, to facilitate the prosecution of

---

3    Rule 17 also states that an individual's capacity to sue or be sued is determined by reference to "the law of the individual's domicile" if that individual is "not acting in a representative capacity," and otherwise by reference to "the law of the state where the court is located." Fed. R. Civ. P. 17(b). In either case, Tennessee law would apply to determine such capacity in this case. In Tennessee, "a non-attorney may not conduct litigation on behalf of an entity or another individual, because doing so would constitute the unauthorized practice of law. For example, the parents of a minor child may not file a pro se complaint on behalf of their child, asserting the child's personal injury claims." *Beard v. Branson*, 528 S.W.3d 487, 495 (Tenn. 2017) (citing *Vandergriff v. ParkRidge E. Hosp.*, 482 S.W.3d 545, 553 (Tenn. Ct. App. 2015) ("While [Tennessee] Rule 17.03 allows a parent to 'sue' on behalf of a minor child, the rule does not authorize a parent to practice law while acting on behalf of the child.")).

the rights not of the next friend, but of the minor. Thus, Rule 17 cannot be read as authorizing the unlicensed practice of law.") (collecting cases); *Parker v. W. Carroll Sch. Dist.*, No. 1:20-CV-1044-STA-TMP, 2021 WL 1895243, at *1 (W.D. Tenn. May 11, 2021) (Rule 17(c) "permits a parent to bring suit on behalf of her minor child, but it does not allow a non-lawyer parent to **represent** her child in federal court.") (emphasis in original) (citing *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002)); *Dunn-Fischer v. Dist. Sch. Bd. of Collier Cnty.*, No. 2:10-CV-512, 2011 WL 1085036, at *2 (M.D. Fla. Mar. 21, 2011) ("It is clear from the Federal Rules that parents may sue or defend on behalf of a minor, but the Rules do not state that a parent may act as legal counsel for their child.") (citing Fed. R. Civ. P. 17(c)(1)).

Title 28, Section 1654 of the U.S. Code allows parties to an action in federal court to "plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. Thus, for a parent without a lawyer to not merely stand in as plaintiff but to "plead and conduct" a case asserting violations of the rights of her minor child, that case must also be the parent's "own." *See Raskin on behalf of JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 286 (5th Cir. 2023) (remanding for consideration of whether federal or state law designates the minor child's claims under the Genetic Information Nondiscrimination Act as the parent's "own," such that the parent could proceed on the child's behalf without counsel). In *Winkelman*, the Supreme Court held that the Individuals with Disabilities Education Act (IDEA) "grants parents independent, enforceable rights ... which are not limited to certain procedural and reimbursement-related matters [but] encompass the entitlement to a free appropriate public education for the parents' child"; it left open the question of "whether IDEA entitles parents to litigate their child's claims *pro se*." 550 U.S. at 533, 535. Unlike the IDEA, a child's right to be free from discrimination conferred under the RA, ADA, and the Equal Protection Clause—the right sought to be vindicated here—belongs to the child alone.

7

*See Link ex rel. Link v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:12-CV-0472, 2012 WL 4506028, at \*5 (M.D. Tenn. Sept. 28, 2012) (refusing "to extend the holding in *Winkelman* so as to confer independent standing on parents asserting claims under the Rehabilitation Act and the ADA"); *id.* at \*4 (noting that it was conceded that parent lacked standing to assert child's constitutional claims under § 1983); *Burton v. Cleveland Heights-Univ. Heights City Sch. Dist. Bd. of Educ.*, No. 1:17 CV 134, 2017 WL 4348915, at \*4 (N.D. Ohio Sept. 29, 2017) (agreeing with *Link* that parent "does not have standing to assert personal claims under the ADA and the Rehabilitation Act based on violations of [child's] rights"); *see also Dunn-Fischer*, 2011 WL 1085036, at \*2 (finding that, although a portion of plaintiff's IDEA claims "arguably raised an injury on her own behalf," her remaining "Rehabilitation Act, ADA, Section 1983, and pendent state claims" did not, so plaintiff would be required "to obtain an attorney to represent her minor daughter"). Therefore, should Plaintiff in her Amended Complaint again attempt to assert such next-friend claims without counsel, the claims will be subject to dismissal without prejudice. *See id.*; *Schneider v. Mahopac Cent. Sch. Dist.*, No. 20-CV-0709 (CS), 2020 WL 509030, at \*1 (S.D.N.Y. Jan. 30, 2020).

### III. EMERGENCY MOTION

With the case awaiting amendment of Plaintiff's opening pleading, Plaintiff's request for a temporary restraining order (TRO) will be denied without prejudice. If necessary, Plaintiff may re-file a motion for emergency injunctive relief when she files her Amended Complaint. However, Plaintiff is cautioned that, if her motion for a TRO is re-filed, the Local Rules require that it be separate from her Amended Complaint, and that it be accompanied by a separate proposed order. *See* M.D. Tenn. L.R. 65.01(b), (c) (requiring that "[e]ach motion for a TRO must be accompanied by a separately filed affidavit or verified written complaint, a memorandum of law, and a proposed

order," and by written certification of "efforts made to give notice of the request for a TRO and the reasons why notice should not be required"). Neither of these procedural requirements was observed in Plaintiff's initial filing.

### IV. CONCLUSION

As explained above:

The Clerk is **DIRECTED** to place the Complaint **UNDER SEAL** and to remove J.H.'s name from the electronic docket.

Within **30 DAYS** of this Order's entry on the docket, Plaintiff **MUST** file an Amended Complaint that complies with Rule 5.2(a)(3) by using only initials where the original Complaint used J.H.'s full name, or by redacting uses of his full name.

Plaintiff is cautioned that her Amended Complaint must either be filed by counsel who enters an appearance on the record of this case or, if filed pro se, must avoid the assertion by the pro se Plaintiff of claims not her own.

With the case in this posture, the Emergency Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction embedded within the Complaint (docketed separately, as Doc. No. 2) is **DENIED WITHOUT PREJUDICE**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

9